UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
ANDREA DAVIS,                           )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )      Civil Action No. 08-1764 (PLF)
                                        )
GRANT PARK NURSING HOME LP, d/b/a       )
GRANT PARK CARE CENTER, *et al.*,       )
                                        )
            Defendants.                 )
_____)


OPINION

            This lawsuit stems from the death of Raymond Bender after an altercation at

Grant Park Care Center, a local nursing home operated by Grant Park Nursing Home LP ("Grant

Park"). Andrea Davis, Mr. Bender's personal representative, alleges that Mr. Bender died as a

result of fraudulent and negligent conduct attributable to Grant Park and six other entities which,

according to Ms. Davis, also exercise control or authority over Grant Park Care Center.[1] The

defendants argue that they are entitled to dismissal or summary judgment with respect to all of

Ms. Davis' claims.[2] The Court agrees with some but not all of the defendants' arguments.

_____

      [1]     The six other defendants named in Ms. Davis' amended complaint are: Centennial
Healthcare Properties, LLC ("Centennial LLC"); Centennial Service Corporation – Grant Park
("Centennial Corp."); Coastal Administrative Services, LLC ("Coastal"); D.C. Medical Investors,
LP ("DCMI"); Shoreline Healthcare Management Corporation ("Shoreline Corp."); and
Shoreline Healthcare Management, LLC ("Shoreline LLC").

      [2]     The papers submitted in connection with this matter include: Grant Park's and
DCMI's Motion to Dismiss Count II of the Amended Complaint ("Grant Park/DCMI Mot.");
DCMI's Motion to Dismiss the Amended Complaint or, in the Alternative, Motion for Summary
Judgment ("DCMI Mot."); Plaintiff's Opposition to Grant Park's and DCMI's Motions ("Grant
Park/DCMI Opp."); Grant Park's and DCMI's Reply ("Grant Park/DCMI Reply"); Shoreline

## I.  BACKGROUND

According to Ms. Davis, Mr. Bender was admitted to Grant Park Care Center on or about January 26, 2008, <u>see</u> Am. Compl. ¶ 20, and soon thereafter was assigned to a room with an individual named Joseph Madigan.  Ms. Davis claims that Mr. Madigan "had a [known] history of psychiatric problems and violence towards other residents of Grant Park Care Center and the staff of Grant Park Care Center," including "a history of territorialism and aggression towards roommates[.]"  <u>Id</u>. ¶ 21.  Ms. Davis further claims that on or about January 28, 2008, and for reasons that remain unclear, Mr. Madigan "pushed Raymond Bender to the ground causing [Mr. Bender] to hit his head."  <u>Id</u>. ¶ 22.  Mr. Bender apparently suffered severe injuries.  <u>See</u> <u>id</u>. ¶ 28.  Ms. Davis' amended complaint states that Mr. Bender was taken to a hospital approximately 24 hours after suffering those injuries, <u>see</u> <u>id</u>. ¶ 22, and that Mr. Bender died on January 29, 2008.  <u>See</u> <u>id</u>. ¶ 8.

———————————

Corporation's Motion to Dismiss the Amended Complaint ("Shoreline Corp. Mot."); Centennial Corporation's Motion to Dismiss the Amended Complaint ("Centennial Corp. Mot."); Plaintiff's Opposition to Centennial Corporation's Motion ("Centennial Corp. Opp."); Centennial Corporation's Reply; Coastal's Motion to Dismiss the Amended Complaint; Plaintiff's Opposition to Coastal's Motion; Coastal's Reply; Shoreline LLC's Motion to Dismiss the Amended Complaint; Plaintiff's Opposition to Shoreline LLC's Motion; Centennial LLC's Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction ("Centennial LLC Mot."); Plaintiff's Opposition to Centennial LLC's Motion ("Centennial LLC Opp."); Centennial LLC's Reply; Centennial LLC's Motion to Strike Exhibits from Plaintiff's Opposition to Centennial LLC's Motion to Dismiss; Plaintiff's Opposition to Centennial LLC's Motion to Strike; Plaintiff's Second Rule 56(f) Motion ("Rule 56(f) Mot."); Grant Park's and DCMI's Opposition to Plaintiff's Second Rule 56(f) Motion ("Rule 56(f) Opp."); Centennial Corporation's Motion to Strike the Proposed Order and Declaration Attached to Plaintiff's Second Rule 56(f) Motion; Coastal's Motion to Strike the Proposed Order and Declaration Attached to Plaintiff's Second Rule 56(f) Motion; Shoreline LLC's Motion to Strike the Proposed Order and Declaration Attached to Plaintiff's Second Rule 56(f) Motion; plaintiff's oppositions to the motions to strike filed by Centennial Corporation, Coastal and Shoreline LLC; Plaintiff's Motion to Compel Production of the Chart of Joseph Madigan from Grant Park ("Mot. Compel"); and Grant Park's Opposition to Plaintiff's Motion to Compel.

Ms. Davis filed this lawsuit on October 16, 2008.  Her amended complaint, filed on November 7, 2008, sets forth three counts.  In Count I, captioned "Negligence/Survival Action," she alleges that "[t]hroughout the course of his residency at Grant Park Care Center, Raymond Bender was subjected to substandard nursing home care."  Am. Compl. ¶ 27; see also id. (setting forth eleven specific instances of alleged substandard care).  She further alleges that

> [a]s a direct and proximate result of the defendants' negligence, neglect, and multiple and repeated breaches of the applicable standards of care, Joseph Madigan assaulted and battered Raymond Bender causing severe mental and emotional distress, conscious pain and suffering, and cause[d] his estate to incur substantial medical and funeral expenses, and other substantial related costs.

Id. ¶ 28.  Ms. Davis seeks $10,000,000 in compensatory damages under Count I, to be assessed jointly and severally against all seven defendants.  See id.

In Count II, captioned "Fraudulent Misrepresentation," Ms. Davis alleges that an agent of the defendants lied to the District of Columbia government and that Mr. Bender suffered harm as a result.  Specifically, she claims that in April 2007 the administrator of Grant Park Care Center, John Darden, represented to the District of Columbia government (in connection with an application for an operating license) that Grant Park Care Center's insurance coverage complied with a District of Columbia Municipal Regulation requiring nursing facilities to possess a $1,000,000 comprehensive general liability insurance policy.  See Am. Compl. ¶¶ 29, 31-33.[3] Ms. Davis claims that Grant Park Care Center did *not* possess a $1,000,000 comprehensive

---

[3]    That regulation provides, in pertinent part, that "[e]ach [nursing facility] shall carry sufficient insurance to cover the following exposures: (a) Hazard (fire, extended coverage, and vandalism); (b) Consequential (indirect) loss from operation breakdown; (c) Theft; and (d) Legal risk (liability). . . .   The liability insurance shall include malpractice coverage of at least one million dollars ($1,000,000), and comprehensive general coverage of at least one million dollars ($1,000,000)."  22 D.C. MUN. REGS. §§ 3205.1-3205.2.

general liability insurance policy at that time, <u>see</u> Grant Park/DCMI Opp. at 6, and that Mr.

Darden knew or should have known that fact.  This alleged misrepresentation harmed Mr.

Bender, in Ms. Davis' view, because (1) the District of Columbia government would not have

issued an operating license to Grant Park Care Center but for the misrepresentation; (2) if it had

not received the operating license, Grant Park Care Center would have been forced to cease

operating soon thereafter; and (3) if Grant Park Care Center had ceased operating soon thereafter,

Mr. Bender would not have had an opportunity to seek admission to Grant Park Care Center in

2008.[4]  Thus, argues Ms. Davis, Mr. Bender came into contact with Mr. Madigan, was battered

and died "[a]s a direct and proximate result of [Mr. Darden's] fraudulent misrepresentation [to

the District of Columbia government]."  Am. Compl. ¶ 37.  Ms. Davis seeks $10,000,000 in

compensatory damages under Count II, to be assessed jointly and severally against all seven

defendants.  <u>See</u> <u>id</u>.

 Finally, in Count III, captioned "Punitive Damages," Ms. Davis seeks $5,000,000

in punitive damages on the ground that defendants' "failure to remove Joseph Madigan from

[Grant Park Care Center] was outrageous, and grossly reckless towards the safety of Raymond

Bender and other residents of [Grant Park Care Center]."  Am. Compl. ¶ 43.

---

 [4] According to Ms. Davis, Grant Park Care Center would have had to cease
operating if it had not obtained the operating license from the District of Columbia government
because "over 90% of [Grant Park Care Center's] revenue comes from . . . government agencies
that require . . . nursing homes to be licensed to receive Medicare or Medicaid payments."  Am.
Compl. ¶ 35.

## II.  SUBJECT MATTER JURISDICTION AND CHOICE OF LAW

The Court's subject matter jurisdiction is based on the parties' diverse citizenship.

See 28 U.S.C. § 1332.[5]  Under the so-called "Erie doctrine," federal courts sitting in diversity

look to state law for rules of decision with respect to substantive matters.  See Erie Railroad Co.

v. Tompkins, 304 U.S. 64, 78 (1938).  Implementing the doctrine normally requires the Court to

begin by engaging in a choice-of-law analysis under the District of Columbia's choice-of-law

rules.  See, e.g., Chandler v. W.E. Welch & Associates, Inc., 533 F. Supp. 2d 94, 104 (D.D.C.

2008).  Here, however, all parties assume that District of Columbia law controls.  The Court need

not and does not question the parties' assumptions on that point.  See CSX Transportation, Inc. v.

Commercial Union Insurance Co., 82 F.3d 478, 482-83 (D.C. Cir. 1996) (parties may waive

choice-of-law arguments); In re Korean Air Lines Disaster of Sept. 1, 1983, 932 F.2d 1475, 1495

(D.C. Cir. 1991) (courts need not address choice of law questions sua sponte).

## III.  STANDARDS OF REVIEW

### A.  Motions to Dismiss Pursuant to Rule 12(b)(2)

Centennial LLC, a non-resident defendant, has moved to dismiss all of Ms. Davis'

claims for lack of personal jurisdiction.  Ms. Davis responds that this Court may exercise

"specific" jurisdiction over Centennial LLC based on the District of Columbia's long-arm statute,

13 D.C. CODE § 423.  (Ms. Davis does not argue that this Court may exercise "general"

jurisdiction over Centennial LLC pursuant to 13 D.C. CODE § 334(a).)

---

[5]        Ms. Davis is a resident of Maryland.  Grant Park, it seems, is a District of
Columbia entity with its primary place of business in the District of Columbia.  It appears that all
of the other defendants (with the exception of Shoreline Corporation) are non-District of
Columbia entities that share an office suite in Atlanta, Georgia.  See Centennial LLC Opp. at 6.

The Court engages in a two-part inquiry to determine whether it may exercise specific jurisdiction over a non-resident defendant. First, the Court determines whether personal jurisdiction is authorized under the District of Columbia's long-arm statute. See GTE New Media Services, Inc. v. BellSouth Corp., 199 F.3d 1343, 1347 (D.C. Cir. 2000). That statute allows a court to exercise personal jurisdiction over a non-resident defendant for claims arising from the following conduct:

> (1) transacting any business in the District of Columbia;
>
> (2) contracting to supply services in the District of Columbia;
>
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
>
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if [the defendant] regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
>
> (5) having an interest in, using, or possessing real property in the District of Columbia;
>
> (6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or
>
> (7) marital or parent and child relationship in the District of Columbia [under certain conditions].

13 D.C. CODE § 423(a). If jurisdiction exists under the District of Columbia's long-arm statute, then the Court determines whether the exercise of personal jurisdiction satisfies due process requirements. See United States v. Ferrara, 54 F.3d 825, 828 (D.C. Cir. 1995)). The plaintiff has the burden of making a *prima facie* showing that the Court has personal jurisdiction over a

defendant.  <u>See</u> <u>Walton v. Bureau of Prisons</u>, 533 F. Supp. 2d 107, 112 (D.D.C. 2008).  To meet

this burden, the plaintiff "must allege specific facts on which personal jurisdiction can be based;

[she] cannot rely on conclusory allegations."  <u>Id</u>. at 112 (internal quotation marks and citations

omitted).

### B.  Motions to Dismiss Pursuant to Rule 12(b)(6)

Several defendants have moved to dismiss some or all of Ms. Davis' claims for

failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure.  Rule 12(b)(6) allows dismissal of a complaint if a plaintiff fails "to

state a claim upon which relief can be granted."  F<span style="font-variant:small-caps">ED</span>. R. C<span style="font-variant:small-caps">IV</span>. P. 12(b)(6).  In <u>Bell Atlantic Corp.</u>

<u>v. Twombly</u>, 550 U.S. 544 (2007), the Supreme Court clarified this standard.  The Court in

<u>Twombly</u> noted that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain

statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests[.]'"  <u>Id</u>. at 555 (quoting

<u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)); <u>see also</u> <u>Aktieselskabet AF 21 v. Fame Jeans Inc.</u>, 525

F.3d 8, 15 (D.C. Cir. 2008).  Although "detailed factual allegations" are not necessary to

withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief,"

a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the

elements of a cause of action."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. at 555.  The Court

stated that there was no "probability requirement at the pleading stage," <u>id</u>. at 556, but "something

beyond . . . mere possibility . . . must be alleged[.]"  <u>Id</u>. at 557-58.  The facts alleged in the

complaint "must be enough to raise a right to relief above the speculative level," <u>id</u>. at 555, or

must be sufficient "to state a claim for relief that is plausible on its face." Id. at 570. See also

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."). The Court in Twombly referred to this newly-clarified

standard as "the plausibility standard." Bell Atlantic Corp. v. Twombly, 550 U.S. at 560

(abandoning the "no set of facts" language from Conley v. Gibson).

On a motion to dismiss under Rule 12(b)(6), the Court must accept as true all of

the factual allegations contained in the complaint. See Bell Atlantic Corp. v. Twombly, 550 U.S.

at 555. The complaint "is construed liberally in the [plaintiff's] favor, and [the Court should]

grant [the plaintiff] the benefit of all inferences that can be derived from the facts alleged."

Kowal v. MCI Communications Corp., 16 F.3d at 1276. Nevertheless, the Court need not accept

inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the

complaint; nor must the Court accept plaintiff's legal conclusions. See id. See also Ashcroft v.

Iqbal, 129 S. Ct. at 1949-50.

### C. Motions for Summary Judgment Pursuant to Rule 56

DCMI has moved to dismiss or, in the alternative, for summary judgment on all of

Ms. Davis' claims, arguing that it cannot be held liable for Mr. Bender's death because it

exercises no control or authority over the day-to-day operations of Grant Park Care Center. For

reasons explained below, the Court treats this motion as a motion for summary judgment.

Summary judgment "should be rendered if the pleadings, the discovery and

disclosure materials on file, and any affidavits [or declarations] show that there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986);

Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  "A fact is 'material' if a dispute over it

might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or

unnecessary' do not affect the summary judgment determination."  Holcomb v. Powell, 433 F.3d

at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  An issue is "genuine" if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See

Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895.  "[T]he

evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her]

favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Electric

Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d

1284, 1288 (D.C. Cir. 1998) (en banc); Washington Post Co. v. Dep't of Health and Human

Services, 865 F.2d 320, 325 (D.C. Cir. 1989).  On a motion for summary judgment, the Court

must "eschew making credibility determinations or weighing the evidence."  Czekalski v. Peters,

475 F.3d 360, 363 (D.C. Cir. 2007).

   The nonmoving party's opposition, however, must consist of more than mere

unsupported allegations or denials and must be supported by affidavits, declarations or other

competent evidence, setting forth specific facts showing that there is a genuine issue for trial.

FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  She is required to

provide evidence that would permit a reasonable jury to find in her favor.  See Laningham v.

United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the nonmovant's evidence is

"merely colorable" or "not significantly probative," summary judgment may be granted.

Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 550 U.S. 372, 380 (2007) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  To defeat a motion for summary judgment, a plaintiff must have more than "a scintilla of evidence to support [her] claims."  Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).

## IV.  DISCUSSION

### A.  Count III ("Punitive Damages")

Centennial Corporation, Coastal and Shoreline LLC argue that Count III, Ms. Davis' stand-alone punitive damages claim, should be dismissed as improperly pled.  See, e.g., Centennial Corp. Mot. at 9.  The Court agrees.  See Cadet v. Draper & Goldberg, PLLC, Civil Action No. 05-2105, 2007 WL 2893418, at *15 (D.D.C. Sept. 27, 2007) ("[P]unitive damages is a remedy, not a freestanding ground for relief.").  It therefore will dismiss Count III as to all of the defendants.  The Court notes that this ruling does not preclude Ms. Davis from seeking punitive damages as a remedy should she prevail on any of her claims.  See Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of North America, 81 F. Supp. 2d 70, 74 (D.D.C. 2000).

### B.  Count II ("Fraudulent Misrepresentation")

In the District of Columbia, fraudulent misrepresentation

> must be established by clear and convincing evidence[.]  The essential elements . . . are: (1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation.

10

<u>Atraqchi v. GUMC Unified Billing Services</u>, 788 A.2d 559, 563 (D.C. 2002) (quoting <u>Bennett v.</u>

<u>Kiggins</u>, 377 A.2d 57, 59-60 (D.C. 1977)).  Grant Park and DCMI argue that Count II should be

dismissed for failure to state a claim principally because Ms. Davis has not pled adequately the

fifth element: detrimental reliance by Mr. Bender.  Instead, they argue, Ms. Davis has alleged only

detrimental reliance by the District of Columbia.  <u>See</u> Grant Park/DCMI Mot. at 3 ("Here, [Ms.

Davis'] allegation is that the District of Columbia relied on [Mr. Darden's] alleged

misrepresentation – not that Mr. Bender did.").  Thus, according to these defendants, Count II of

Ms. Davis' complaint fails to comply with Rule 9(b) of the Federal Rules of Civil Procedure, <u>see</u>

Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake."), and must be dismissed for failure to state a claim

pursuant to Rule 12(b)(6).

      Ms. Davis concedes that her amended complaint does not allege, and that she

cannot establish, "that Raymond Bender relied 'directly' [on] John Darden's fraudulent

misrepresentation to the District of Columbia[.]"  Grant Park/DCMI Opp. at 11.  But, she argues,

Count II should not be dismissed because she

> can establish that Raymond Bender "indirectly" relied on John
> Darden's fraudulent misrepresentation to the DC government . . . [in
> the sense that Mr. Bender] rightfully believed that Grant Park [Care]
> Center had [met] the requirements required by District of Columbia
> law to be a licensed nursing home, including the requirement of a
> $1,000,000 liability insurance policy[.]

<u>Id</u>.  To be clear, Ms. Davis does not seem to be arguing that Mr. Bender "indirectly" relied on Mr.

Darden's alleged misrepresentations in the sense that Mr. Bender actually relied on written

materials, oral statements or actions by others which conveyed or reflected Mr. Darden's alleged

misrepresentations.  Were that the case, her theory of reliance would be relatively uncontroversial.
See, e.g., Nader v. Allegheny Airlines, Inc., 512 F.2d 527, 547-49 (D.C. Cir. 1975), *rev'd on other grounds*, 423 U.S. 946 (1976); Armstrong v. Accrediting Council for Continuing Education & Training, Inc., 961 F. Supp. 305, 309 (D.D.C. 1997); Mills. v. Cosmopolitan Insurance Agency, Inc., 424 A.2d 43, 49 (D.C. 1980); Restatement (Second) of Torts § 533 ("The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other[.]").[6]

Ms. Davis' theory of reliance is more exotic.  In essence, she argues that Mr. Bender possessed a good faith belief that Grant Park Care Center was in compliance with all applicable licensing requirements, and that this belief constituted "reliance" on Mr. Darden's misrepresentations.  This is so, argues Ms. Davis, not because Mr. Bender's belief was based, directly or indirectly, on Mr. Darden's alleged misrepresentations, but rather because (1) Grant Park Care Center would have had to close its doors before Mr. Bender sought admission if Mr. Darden had told the truth to the District of Columbia, and (2) if Grant Park Care Center had been forced to close its doors, then Mr. Bender never would have formed the belief that it was in compliance with all applicable licensing requirements.  See Grant Park/DCMI Opp. at 10-11.

---

[6]     Ms. Davis has never suggested that Mr. Darden or any of the defendants "intend[ed] or ha[d] reason to expect" that Mr. Darden's alleged misrepresentations about Grant Park Care Center's insurance coverage would be communicated to Mr. Bender or to other potential residents.  Thus, even if Ms. Davis were arguing that Mr. Bender actually relied on intermediary documents, statements or actions reflecting Mr. Darden's misrepresentations, it is not at all clear that she could establish liability under the traditional "indirect reliance" rule articulated in Section 533 of the Restatement.

The Court is not persuaded by Ms. Davis' argument for several reasons. As an initial matter, it is difficult to understand its underlying logic. Ms. Davis frankly admits that she cannot show that Mr. Bender actually relied on Mr. Darden's alleged misrepresentations because Mr. Bender is dead (and, presumably, because she has no other evidence of what information Mr. Bender relied upon in seeking admission to Grant Park Care Center). See Grant Park/DCMI Opp. at 11. At the same time, Ms. Davis maintains that she *can* show by clear and convincing evidence that Mr. Bender believed that Grant Park Care Center was in compliance with all applicable licensing requirements. It is not at all clear to the Court why the unavailability of Mr. Bender's testimony, coupled with the lack of any other evidence with respect to the information upon which he relied, does not preclude Ms. Davis from making both the first *and* the second showing. In other words, if she cannot show on what Mr. Bender relied, how can she show what he believed?

In any event, Count II fails for at least two other reasons. First, the Court is not persuaded that Ms. Davis' fraudulent misrepresentation claim is based on a valid theory of reliance. Ms. Davis concedes that her "good faith belief" theory of reliance is not explicitly recognized by District of Columbia law. See Grant Park/DCMI Opp. at 11 (characterizing Count II as a "case of first impression" under District of Columbia law). Of course, novelty alone is not a sufficient reason for rejecting a new legal theory. When faced with a novel or undecided issue of state law, federal district courts sitting in diversity must resolve the issue according to "the rule that [they] believe[] the state's highest court, from all that is known about its methods of reaching decisions and the authorities it tends to rely on, is likely to adopt in the not too distant future." 19 Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 4507 at 200 (2d ed. 1996). See Hoehn v. United States, 217 F. Supp. 2d 39, 45 (D.D.C. 2002). In

resolving such issues, courts may consider "all of the available legal sources," including relevant

case law of the forum, relevant case law of other fora, scholarly treatises, and law review articles.

19 CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 4507 at

191-200 (2d ed. 1996).

      Ms. Davis has cited no District of Columbia case law bearing on the validity of her

"good faith belief" theory of reliance – let alone any authority supporting that theory.  Nor has she

referred to any other relevant authorities or offered any argument in support of the proposition that

the District of Columbia Court of Appeals has recognized or is likely soon to recognize fraudulent

misrepresentation claims based on such a theory.  Cf. Athridge v. Aetna Casualty and Surety Co.,

Civil Action No. 96-2708, 2001 WL 214212, at *13 (D.D.C. Mar. 2, 2001).[7]  The Court can only

surmise from this that Ms. Davis is aware of no authority that supports her theory.  Nor has the

Court's independent research revealed any such authority.  Under these circumstances, the Court

---

[7]     The only effort Ms. Davis makes in this regard is to attempt to analogize her case to Learjet Corp. v. Spenlinhauer, 901 F.2d 198 (1st Cir. 1990), a diversity case governed by Kansas law.  In Spenlinhauer, counter-claimant Robert Spenlinhauer sued Learjet for fraudulent misrepresentation, alleging that (1) Learjet misrepresented facts to the Federal Aviation Administration in order to obtain a certificate of airworthiness for certain airplanes; (2) he purchased one of those airplanes in reliance on the FAA certification; and thus (3) he relied on Learjet's alleged misrepresentations to the FAA.  The First Circuit concluded that Mr. Spenlinhauer had stated a claim for fraudulent misrepresentation because "Kansas courts have held that a plaintiff may recover for fraudulent misrepresentation where he relies only indirectly (through the statements or acts of a third person) on the misrepresentations of the defendant[.]" Learjet Corp. v. Spenlinhauer, 901 F.2d at 200-01.

     The problem with Ms. Davis' attempt to hitch her cart to Spenlinhauer is that Mr. Spenlinhauer relied on a conventional "indirect reliance" theory: he alleged that he relied on Learjet's misrepresentations by relying on the FAA certification that embodied those misrepresentations.  See Learjet Corp. v. Spenlinhauer, 901 F.2d at 201.  As explained above, Ms. Davis does not make similar allegations.  Thus, for purposes of this Opinion, it does not matter if Spenlinhauer is consistent with District of Columbia law because Spenlinhauer does not support Ms. Davis' theory of reliance.

is compelled to conclude that District of Columbia law does not recognize Ms. Davis' theory of reliance, and will not do so any time soon. See Ideal Structures Corp. v. Levine Huntsville Development Corp., 396 F.2d 917, 924 (5th Cir. 1968) ("Though federal courts should keep abreast with imminent change [when predicting how a state's highest court would rule], our footing should be reasonably sure if not absolutely certain.").[8]

Second, even if Ms. Davis' theory of reliance had some support in District of Columbia law, she failed to include that theory in her amended complaint. Her amended complaint neither states nor suggests that Mr. Bender possessed a good faith belief that Grant Park Care Center was in compliance with all applicable licensing requirements, and that Mr. Bender thereby "relied" on Mr. Darden's alleged misrepresentations. Nor has she sought leave to amend her complaint to add such an allegation (and it is doubtful that she could in view of the requirements of Rule 9(b) and Mr. Bender's death). The only reliance alleged in Ms. Davis' amended complaint is reliance by the District of Columbia government. See Am. Compl. ¶ 34 (alleging that "[t]he District of Columbia Government relied on [Mr. Darden's] . . . fraudulent misrepresentation"). This is insufficient. See Atraqchi v. GUMC Unified Billing Services, 788 A.2d at 563 ("One pleading fraud must allege such facts as will reveal the existence of all the requisite elements of fraud.") (quoting Bennett v. Kiggins, 377 A.2d at 59-60). Ms. Davis therefore has failed to allege a necessary element of her fraudulent misrepresentation claim.

_____

[8]     Though the parties do not explicitly address the point, the Court notes that Count II is probably subject to an additional, conceptually related objection as well: namely, that its theory of causation violates the so-called "remoteness doctrine." See Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912, 927 (3d Cir. 1999) ("Remoteness is an aspect of the proximate cause analysis, in that an injury that is too remote from its causal agent fails to satisfy tort law's proximate cause requirement[.]").

For the foregoing reasons, the Court will dismiss Count II for failure to state a claim as to all of the defendants.  Thus, the only question that remains is whether Count I survives as to each defendant.  The Court turns to that question now.

### C. Count I ("Negligence/Survival Action")

#### 1. Centennial Corporation, Coastal and Shoreline LLC

Centennial Corporation, Coastal and Shoreline LLC seek dismissal of all of Ms. Davis' claims, including Count I, for failure to comply with 16 D.C. CODE § 2802.  See, e.g., Centennial Corp. Mot. at 2-4.  Section 2802, entitled "Notice of intention to file suit," provides:

> (a) Any person who intends to file an action in the court alleging medical malpractice against a healthcare provider shall notify the intended defendant of his or her action not less than 90 days prior to filing the action. . . .
>
> \*      \*      \*
>
> (c) A legal action alleging medical malpractice shall not be commenced in the court unless the requirements of this section have been satisfied.

16 D.C. CODE § 2802.  For purposes of Section 2802, "'[c]ourt' means the Superior Court of the District of Columbia."  16 D.C. CODE § 2801(1).  Section 2802 is part of an overarching statutory scheme intended to govern medical malpractice suits in the District of Columbia and to control the costs associated with such suits.  See 16 D.C. CODE §§ 2801-2841.  Thus, for example, once such a suit is properly noticed and filed, the parties must participate in mediation before litigating further.  See 16 D.C. CODE § 2821.

According to Centennial Corporation, Coastal and Shoreline LLC, Section 2802 requires dismissal of Count I as to them because (1) Count I constitutes a "medical malpractice"

claim within the meaning of Section 2802; (2) Ms. Davis failed to adhere to the notice requirements of Section 2802 before filing her lawsuit; and (3) under the Erie doctrine, the notice requirement of Section 2802 constitutes state "substantive law" applicable to this diversity action. See, e.g., Centennial Corp. Mot. at 2-3.  Ms. Davis concedes the first two points but argues that Section 2802 applies only to actions brought in the Superior Court of the District of Columbia. See, e.g., Centennial Corp. Opp. at 6 (arguing that, for purposes of Section 2802, the term "court" is defined as "the Superior Court for the District of Columbia, not [the] United States District Court for the District of Columbia.  Accordingly [Section 2802] does not require a plaintiff to give the '90 day notice' prior to filing a complaint [alleging medical malpractice] in the United States District Court for the District of Columbia") (footnote omitted).

The Court agrees with Centennial Corporation, Coastal and Shoreline LLC that Count I must be dismissed as to them because Ms. Davis was required to comply with Section 2802 and did not.  That conclusion is compelled by the D.C. Circuit's decision in Bledsoe v. Crowley, 849 F.2d 639 (D.C. Cir. 1988).

Like this case, Bledsoe was a state-law medical malpractice case brought in federal court on the basis of diversity of citizenship; the plaintiff was a District of Columbia resident seeking relief against two Maryland doctors for treatment received in Maryland.  The D.C. Circuit first determined that the case was governed by the substantive law of Maryland.  See Bledsoe v. Crowley, 849 F.2d at 643.  It next considered the applicability of Maryland's Health Care Malpractice Claims Act.  See MD. CTS. & JUD. PROC. CODE §§ 3-2A-01, et seq.  That statute requires litigants to submit to mandatory arbitration as a condition precedent to bringing such suits "in any court of this State."  Bledsoe v. Crowley, 849 F.2d at 641 (quoting MD. CTS. & JUD. PROC.

CODE § 3-2A-02(a)(2)).  At that time, the statute not only referred to "any court of this State," but also defined "court" as "a circuit court of a county or court of the Supreme Bench of Baltimore City[.]"  Davison v. Sinai Hospital, 462 F. Supp. 778, 779 (D. Md. 1978), aff'd, 617 F.2d 361 (4th Cir. 1980) (quoting MD. CTS. & JUD. PROC. CODE § 3-2A-01(c)).  The D.C. Circuit observed that Davison held that the mandatory arbitration provision of the Maryland statute was intended to apply in federal district courts sitting in diversity and was "substantive" law for Erie purposes.  Thus, it required arbitration regardless of whether a case to which it applied was brought in federal or state court.  Relying on Davison, the D.C. Circuit concluded that the Maryland statute applied to the claims in Bledsoe as well, and thus held that arbitration was a prerequisite to bringing suit in this Court.  See Bledsoe v. Crowley, 849 F.2d at 643-44 (observing that, for the reasons stated in Davison, the Maryland statute could not be construed "to allow a plaintiff to avoid the requirements of arbitration merely by filing a diversity action in federal court. . . . [C]ommon sense requires that the definition of 'court' [found in the Maryland statute] must encompass the federal District Court when jurisdictional requirements are met") (quoting in part Ott v. Kaiser-Georgetown Community Health Plan, Inc., 526 A.2d 46, 50 (Md. 1987)).

Bledsoe is binding on this Court and requires an analogous result in this case.  For the reasons discussed in Bledsoe and Davison, the District of Columbia statute at issue here cannot be construed to allow Ms. Davis to avoid its pre-litigation requirements "merely by filing a diversity action in federal court."  Bledsoe v. Crowley, 849 F.2d at 643.  The Court therefore concludes that Section 2802 applies to Ms. Davis' claims.[9]

_____

[9]     It is worth noting that virtually all federal courts to have considered similar questions under similar state laws have reached similar conclusions.  See, e.g., Baber v. Edman, 719 F.2d 122, 123 (5th Cir. 1983) (holding that a Texas statute requiring pre-filing notice for

As Section 2802 applies here, and as it is undisputed that Ms. Davis failed to comply with Section 2802, it follows that Ms. Davis may not pursue Count I as to Centennial Corporation, Coastal and Shoreline LLC.[10]  But how should the Court dispose of Count I with respect to these defendants?  Nothing in Section 2802 requires or supports dismissal *with prejudice* of Count I.  Faced with similar failures to comply with similar state laws, at least two courts have dismissed plaintiffs' claims *without* prejudice.  See Davison v. Sinai Hospital, 462 F. Supp. 778, 781 (D. Md. 1978), *aff'd*, 617 F.2d 361 (4th Cir. 1980) (applying Maryland law requiring pre-litigation arbitration); Stanley v. United States, 321 F. Supp. 2d at 809 (applying West Virginia law requiring pre-filing notice).  In contrast, the D.C. Circuit concluded that a district court abused its discretion by dismissing (rather than staying) a plaintiff's medical malpractice claims for failure to comply with a Maryland statute requiring pre-litigation arbitration.  In the D.C. Circuit's view, it was an abuse of discretion for the district court to dismiss plaintiff's claims rather than to stay those claims pending the outcome of the statutorily mandated arbitration because (1) the plaintiff had asked the district court to stay the case pending

_____

medical malpractice claims applied in a federal court action governed by Texas law); Redmond v. Astrazeneca Pharmaceuticals LP, 492 F. Supp. 2d 575, 577-78 (S.D. Miss. 2007) (holding that a Mississippi statute requiring pre-filing notice for medical malpractice claims applied in a federal court action governed by Mississippi law); Stanley v. United States, 321 F. Supp. 2d 805, 807-08 (N.D. W. Va. 2004) (holding that a West Virginia statute requiring pre-filing notice for medical malpractice claims applied in a federal court action governed by West Virginia law); Houk v. Furman, 613 F. Supp. 1022, 1026-27 (D. Me. 1985) (holding that a Maine statute requiring pre-filing notice for medical malpractice claims applied in a federal court action governed by Maine law).  Ms. Davis has not attempted to distinguish these cases or the statutes on which they turn, and the Court sees no grounds for doing so.

[10]      A court may waive the requirements of Section 2802 "upon a showing of good faith effort to comply or if the interests of justice dictate."  16 D.C. CODE § 2804.  Ms. Davis has not invoked these grounds for waiver, however, and the Court concludes that they do not apply.

arbitration, and (2) the parties informed the court of appeals at oral argument that arbitration proceedings were underway.  See Bledsoe v. Crowley, 849 F.2d at 645-46.

Here, neither of the two factors that led the D.C. Circuit to reject dismissal and endorse a stay are present.  No party has asked the Court to grant a stay should it find Section 2802 applicable, and no party has indicated that efforts are being made or will be made to comply with the provisions of the District of Columbia Code, including 16 D.C. CODE § 2802, which govern medical malpractice actions.  Thus, Count I will be dismissed without prejudice as to Centennial Corporation, Coastal and Shoreline LLC.

### 2.  Centennial LLC

As noted above, Centennial LLC is a non-District of Columbia entity headquartered in Georgia.  It argues that (1) it has no meaningful contacts with the District of Columbia; (2) this Court therefore cannot assert personal jurisdiction over it; and thus (3) Count I should be dismissed as to Centennial LLC pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  See Centennial LLC Mot. at 6.  In response, Ms. Davis argues that Centennial LLC's argument is merely an attempt to hide behind corporate formalities.  According to Ms. Davis,

> [i]t is common knowledge in the nursing home industry that numerous nursing home chains have undergone corporate restructuring to avoid liability claims.  This restructuring has essentially broken down a nursing home's operation into several parts run by different business entitites: managerial, administrative, accounting and real property.  These separate entities are created to avoid financial liability for legal claims arising from contract and tort claims against the actual nursing home[.]

Centennial LLC Opp. at 5.  Ms. Davis claims that this case illustrates that strategy.  Specifically, she claims that all of the non-resident defendants – including Centennial LLC – maintain separate

legal identities and remote headquarters to shield themselves against liability for events that occur

at Grant Park Care Center, while still exerting control over (and enjoying profits from) the Center.

      To support this allegation as to Centennial LLC, she points to documents which

appear to show that – notwithstanding its denials of control or authority over Grant Park Care

Center – Centennial LLC "purchased a general liability insurance policy that listed itself as the

'named insured' [for] acts occuring at Grant Park [Care] Center . . . [presumably] to satisfy the . . .

minimum insurance requirements for a District of Columbia nursing home[.]" Centennial LLC

Opp. at 8; <u>see</u> <u>also</u> <u>id</u>., Ex. 2, Certificate of Liability Insurance (Aug. 2, 2007).  From this

insurance policy Ms. Davis asks the Court to infer that Centennial LLC "not only had extensive

involvement in purchasing the insurance policy but also [in] directly or indirectly managing Grant

Park [Care] Center," and therefore that Centennial LLC's contacts with this forum are sufficient to

support this Court's assertion of personal jurisdiction.  Centennial LLC Opp. at 6.  In response,

Centennial LLC does not deny that it appears to be the "named insured" on an insurance policy for

events occurring at Grant Park Care Center.  It does, however, deny that the mere purchase of this

policy justifies this Court's assertion of personal jurisdiction.  It also relies on an affidavit from

Patrick Duplantis, the president and CEO of Centennial LLC, in which Mr. Duplantis states that

Centennial LLC transacts no business, solicits no business, and maintains no office, post office

box, telephone listing, bank account or property in the District of Columbia.  <u>See</u> Centennial LLC

Mot., Ex. 1, Affidavit of Patrick J. Duplantis ¶¶ 4-13 (Nov. 11, 2008).

      The Court will deny without prejudice Centennial LLC's motion.  Despite both

sides' arguments to the contrary, the current state of the record is insufficient to determine

whether Centennial LLC has engaged in "meaningful acts reflecting purposeful, affirmative

activity within the District of Columbia," Jackson v. Loews Washington Cinemas, Inc., 944 A.2d

1088, 1093 (D.C. 2008) (internal quotation marks and citation omitted), and hence whether it

would be appropriate for this Court to assert personal jurisdiction over Centennial LLC.  Indeed,

the little evidence that exists actually obscures rather than clarifies issues crucial to that

determination, including (1) the nature and substance of the corporate relationship between

Centennial LLC and Grant Park Care Center; (2) the degree of control, if any, exerted by

Centennial LLC over Grant Park Care Center, directly or through intermediaries; (3) the nature

and substance of Centennial LLC's business activities within the District of Columbia (including

contracts, if any, to provide services here); and (4) the relationship, or lack thereof, between

Centennial LLC's contacts with the District of Columbia and Ms. Davis' asserted injuries.[11]

 To remedy that problem the Court will permit Ms. Davis to engage in jurisdictional

discovery with respect to the matters listed in the preceding paragraph.  See El-Fadl v. Central

Bank of Jordan, 75 F.3d 668, 676 (D.C. Cir. 1996) ("A plaintiff faced with a motion to dismiss for

lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the

jurisdiction of a federal court by withholding information on its contacts with the forum.").[12]

---

[11] In reaching this conclusion the Court does not rely on the affidavit of Victoria Fierro or any of the other exhibits attached to Ms. Davis' opposition to Centennial LLC's motion to dismiss which Centennial LLC has moved to strike.  See Centennial LLC's Motion to Strike Exhibits from Plaintiff's Opposition to Centennial LLC's Motion to Dismiss.  The Court therefore will deny as moot Centennial LLC's motion to strike.

[12] Though Ms. Davis has requested jurisdictional discovery only indirectly, see Centennial LLC Opp. at 6, it nevertheless is appropriate to permit her to pursue such discovery at this stage because (1) "[t]his Circuit's standard for permitting jurisdictional discovery is quite liberal," Diamond Chemical Co., Inc. v. Atofina Chemicals, Inc., 268 F. Supp. 2d 1, 15 (D.D.C. 2003), and (2) Ms. Davis has identified facts evincing a "good faith belief that . . . discovery will enable [her] to show that the court has personal jurisdiction over" Centennial LLC.  Caribbean Broadcasting Systems, Ltd. v. Cable & Wireless PLC, 148 F.3d 1080, 1090 (D.C. Cir. 1998).

The Court expresses no view as to how many interrogatories, requests for production and/or depositions are necessary to accomplish this goal; the parties are encouraged to negotiate a mutually satisfactory arrangement on that score.  Centennial LLC may renew its motion to dismiss for lack of personal jurisdiction after Ms. Davis has had an opportunity to obtain a reasonable amount of jurisdictional discovery.

### 3.  DCMI

DCMI argues that the Court should dismiss Count I as to DCMI or, in the alternative, grant summary judgment in DCMI's favor, because DCMI is merely "a passive investment entity [with no] management, control or operational responsibilities with regard to Grant Park Care Center."  DCMI Mot. at 1.  DCMI has submitted an affidavit from Kent Fosha, the president and CEO of Centennial Corporation, in support of this claim.  See id., Ex. A, Affidavit of Kent C. Fosha, Jr. ¶¶ 5-7 (Nov. 5, 2008).  Because DCMI relies on this affidavit, the Court will treat DCMI's motion as a motion for summary judgment.  See FED. R. CIV. P. 12(d).

Ms. Davis argues that the Court should reject DCMI's denial of involvement in the day-to-day operations of Grant Park Care Center – like Centennial LLC's similar denial – as disingenuous.  See Grant Park/DCMI Opp. at 7.  In the alternative, Ms. Davis argues that she needs discovery to oppose DCMI's motion for summary judgment, and she therefore has filed a motion for limited discovery pursuant to Rule 56(f) of the Federal Rules of Civil Procedure.  See Rule 56(f) Mot. at 5-6.[13]  She seeks discovery on the following topics:

---

[13]     If a party opposing summary judgment "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order."  FED. R. CIV. P. 56(f).

a.  Who are the partners of [Grant Park] and [DCMI], and the nature and extent of the control these partners have in the operations of Grant Park [Care] Center. . . .

b.  The nature and extent of the control [DCMI] has in the operations of Grant Park [Care] Center.  Additionally, whether [DCMI receives] an excessive amount of money from the operations of Grant Park [Care] Center . . . .

c.  The nature and extent of the control [Grant Park] has in the operations of Grant Park [Care] Center.  Additionally, whether [Grant Park] receives an excessive amount of money from the operations of Grant Park [Care] Center . . . .

d.  Where the money that [DCMI] and [Grant Park] receive[] from Grant Park [Care] Center goes to.  Does it go to any of the other defendants in this case or a parent company who owns all or some of the other defendants in this case?

Id. at 6.  Grant Park and DCMI oppose Ms. Davis' request for Rule 56(f) discovery, arguing that

Ms. Davis is seeking to obtain information on matters beyond the one issue relevant to DCMI's

motion for summary judgment: "whether [DCMI] exercised *control* over [Grant Park Care

Center]."  Rule 56(f) Opp. at 2 (emphasis in original).

The Court concludes that Ms. Davis is entitled to the discovery requested because

she has shown that, without it, she "cannot present facts essential to justify [her] opposition" to

DCMI's motion for summary judgment.  FED. R. CIV. P. 56(f).  Specifically, she has shown that

she cannot present facts related to DCMI's control or authority over Grant Park Care Center,

because such facts are for the most part within DCMI's and Grant Park's possession.[14]

---

[14]   In reaching this conclusion, the Court necessarily rejects the argument (by Centennial Corporation, Coastal and Shoreline LLC) that Ms. Davis' Rule 56(f) motion is deficient because it is supported by a declaration from her attorney.  The Court therefore will deny the motions by Centennial Corporation, Coastal and Shoreline LLC to strike the proposed order and declaration attached to Ms. Davis' Rule 56(f) motion.

Accordingly, the Court will (1) permit Ms. Davis to pursue the limited discovery she has requested pursuant to Rule 56(f), and (2) deny without prejudice DCMI's motion for summary judgment.  See Strang v. United States Arms Control & Disarmament Agency, 864 F.2d 859, 861 (D.C. Cir. 1989) (a court "may deny a motion for summary judgment or order a continuance to permit discovery if the party opposing the motion adequately explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion") (emphasis omitted).  See also Americable Int'l Inc. v. Dep't of Navy, 129 F.3d 1271, 1274 (D.C. Cir. 1997) (pre-discovery motions for summary judgment typically are premature).  Again, the Court expresses no view as to how many interrogatories, requests for production and/or depositions will be necessary to permit Ms. Davis to oppose DCMI's renewed motion for summary judgment.

### 4.  Loose Ends

There remain two loose ends to tie up.  First, Shoreline Corporation argues that it "is not an existing entity and . . . has never been an existing business entity."  Shoreline Corp. Mot. at 2.  It further suggests that Ms. Davis simply committed a scrivener's error in naming Shoreline Corporation as a defendant.  See id.  Ms. Davis has not opposed this motion, so the Court will assume that she concedes the point and dismiss Shoreline Corporation from this case.

Second, Ms. Davis has moved to compel Grant Park to produce Mr. Madigan's medical chart because Ms. Davis believes that Grant Park will not do so absent a court order.  See Mot. Compel at 1.  In response, Grant Park argues that Ms. Davis' motion to compel is premature because Ms. Davis has yet to request the chart.  The Court agrees with Grant Park.  Thus, it will deny without prejudice Ms. Davis' motion to compel.

V.  CONCLUSION

To sum up: Count III is dismissed as to all of the defendants.  So too is Count II.

Count I is dismissed without prejudice as to Centennial Corporation, Coastal and Shoreline LLC.

The Court reserves judgment, pending limited discovery, as to whether (1) Centennial LLC is

entitled to dismissal of Count I (on lack-of-personal-jurisdiction grounds), and (2) DCMI is

entitled to summary judgment on Count I (on lack-of-control grounds).  In the meantime,

Centennial LLC's and DCMI's motions to that effect are denied without prejudice.  All of the

defendants' motions to strike are denied.  Finally, Shoreline Corporation is dismissed as a

defendant, and Ms. Davis' motion to compel discovery from Grant Park is denied without

prejudice.

An Order consistent with this Opinion will issue this same day.

SO ORDERED.


/s/_____
PAUL L. FRIEDMAN
United States District Judge


DATE:   August 5, 2009